John J. CUNEO, Regional Director of the Twenty-Second Region of the National Labor Relations Board, for and on behalf of the NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

LOCAL 575, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, Respondent.

Civ. A. No. 586–62.

United States District Court
D. New Jersey.

Nov. 8, 1962.

Robert D. Carroll, Newark, N. J., and Allen De Long, Washington, D. C., for petitioner.

Anthony J. Shovelski, New York City, for charging party.

Talisman & Golat, by Solomon Golat, Newark, N. J., for respondent.

WORTENDYKE, District Judge.

This case is before the Court upon the petition of a Regional Director of the National Labor Relations Board (Regional Director, or Board) pursuant to 29 U.S.C. § 160($l$), for an injunction, pending the final disposition of a charge before the Board, restraining the respondent labor union local (Local) from picketing at or in the vicinity of certain restaurant premises operated by neutral employers, with an object of forcing or requiring such restaurant proprietors to cease using and handling merchandise-vending machines, manufactured and maintained by the employer of members of the respondent, on the restaurant premises of the neutral employers.

It appears from the petition and annexed documents that on January 17, 1962, Dierickx Vending Co. Inc. (Dierickx) filed with the Board a written complaint charging that the respondent Local is engaging in unfair labor practices within the meaning of § 8(b) (4) (ii) (B) of the National Labor Relations Act as amended, by picketing, on and since January 8, 1962, at certain restaurant premises in the petitioner's region operated as business enterprises affecting commerce, with the object of forcing the proprietors of such enterprises to cease doing business with Dierickx. Upon the filing of the petition an order was made by this Court directing the respondent to show cause why the relief prayed for in the petition should not be granted; and, by a further order of the Court, made on August 3, 1962, consented to by counsel for both parties, the return of the order to show cause was continued to September 17, 1962. The latter order also approved a written stipulation of the parties that, pending the continued return day of the order to show cause, respondent, its officers, agents, representatives, servants, employees, attorneys, and all members or other persons acting in concert or participation with it or them, would refrain from picketing or threatening to picket the restaurant premises mentioned in the petition, or any other person doing business with Dierickx, or otherwise coercing or restraining any other person doing business with Dierickx where an object thereof was to force such restaurant proprietors or other persons doing business with Dierickx to cease using, selling, handling, transporting or otherwise dealing in the products of, or to cease doing business with Dierickx. Upon the continued return of said order to show cause, evidence was presented with respect to the allegations of the petition and those of respondent's answer thereto.

The evidence disclosed that Dierickx is a corporation engaged in the vending of cigarettes, music, candy and games by means of coin actuated machines maintained and operated by Dierickx in vari-

ous public places, including diners and other restaurant premises operated by independent owners and proprietors, in the State of New Jersey. The gross business of Dierickx is approximately one and a half million dollars per annum, and it purchases merchandise for use in its vending machines of a gross value of one million dollars per year from sources outside of the State of New Jersey. A collective bargaining agreement in behalf of the employees of Dierickx with their employer terminated December 21, 1961, and negotiations for a new collective bargaining agreement which commenced prior to such termination, proved unsuccessful. Accordingly a strike of the employees of Dierickx was called by the respondent on December 6, 1961.

The employment activities of the employees of Dierickx had consisted of the installation, servicing and supply of the vending machines owned and operated by Dierickx. These machines are leased by Dierickx to the proprietors of the restaurant and other businesses at the locations at which they are operated; and in some instances the proprietor of the premises in which the machines are placed shares in the net proceeds of the merchandise sold through the machines.

On January 29, 1962, respondent picketed the Oasis Restaurant in the City of Newark, using one man for the purpose, who carried a large "sandwich" sign bearing the following legend: "PLEASE do not patronize cigarette vending machines maintained by Dierickx Vending Co. at this establishment—Employees of Dierickx Vending Co.—ON STRIKE for decent wages—and working conditions—NOTICE we have no dispute with employees of Oasis. We do not wish an interruption or stoppage of work by these employees. We merely ask your help in not patronizing struck vending machines.—Help us win an American standard of living. Local 575 I.B.T." A sign of similar import but worded differently was carried by a single picket representing the respondent, in front of Hank & Rays Diner in the same City,

and others in front of Walters Inn and Springfield Diner in Springfield, New Jersey. Each picket was also provided with an arm band in addition to the signs which he carried. No physical interference was offered by any picket to the entry or exit of patrons to and from the restaurant premises in front of which the picket patrolled. On one occasion, when the maintenance manager of Dierickx visited the Oasis restaurant, he found, upon emerging, the President of Local, in addition to the picket, on the sidewalk in front of the premises. The proprietor of Walters Inn was visited by respondent's President after the commencement of the strike, who explained that respondent was striking the vending machine company and requested the restaurant proprietor to remove the vending machines from his premises. Upon the proprietor's inquiry as to whether a secondary boycott was involved, the President answered in the negative, but added that the respondent would picket the premises if the machines were not withdrawn. Accordingly, the restaurant proprietor agreed to place "out of order" signs on the machines. In the case of Hank and Rays Diner the same Local President approached its proprietor and informed him that he would place a picket line in front of the diner. Fifteen minutes later the picketing commenced at that location, and continued for the balance of the month (July). This diner proprietor testified that he suffered a loss of revenue amounting to between $300 and $350 per week during the three week's duration of the picketing, but that after an interval of a week or two following the end of the picketing, his income improved. In the case of this diner, there were as many as five men picketing at the same time, but only one of them carried the sign. Respondent's President also visited the proprietor of the Springfield Diner, and requested him to remove the Dierickx vending machine from his premises, advising the proprietor that he would picket the premises if the machine was not removed. The proprietor ultimately agreed, with the consent of the

Local's President, to place an "out of order" sign on the machine. In another instance in which a diner proprietor was visited by respondent's President, the latter suggested that the former disconnect the electrical current supply from the machine, and this suggestion was complied with.

In behalf of respondent, its President testified that the purpose of the picketing was to bring before the public the facts underlying the dispute between Dierickx and its employees. The Local President was in charge of the picketing operations and was familiar with the picketing as it was conducted at the various locations previously referred to. This witness admitted that he talked with the proprietors of the various restaurant premises in which the Dierickx machines were located, stating that he would appreciate their cooperation in withholding aid from Dierickx, but that the respondent had no intention of affecting the restaurant proprietor's business, but intended merely to hand out leaflets and carry a sign. He also disclaimed any intention on the part of respondent to enter into a dispute with the proprietor of any of the restaurant premises, or to inflict any loss upon him.

The foregoing is a general summary of the evidence presented upon the return of the order to show cause in this case.

This opinion shall constitute my findings of fact and conclusions of law, as required by Rule 52(a) of the Federal Rules of Civil Procedure.

The Regional Director contends that the actions of respondent constitute an unfair labor practice within the meaning of § 8(b) (4) (ii) (B) of the Act, 29 U.S.C. § 158(b) (4) (ii) (B). The pertinent language of the cited statutory provision declares that it shall be an unfair labor practice for a labor organization or its agents "to threaten, coerce, or restrain any person engaged * * * in an industry affecting commerce, where in either case an object thereof is * * * (B) forcing or requiring any person * * * to cease doing business with

any other person, * * *: *Provided,* That nothing contained in this clause (B) shall be construed to make unlawful, where not otherwise unlawful, any primary strike or primary picketing; * * *."

The question before me is whether the conduct of the respondent, its president and representatives, disclosed by the evidence, is "primary picketing" or, if not, whether there is reasonable cause to believe that the conceded picketing of the restaurant premises of the neutral employers had as "an object thereof" forcing or requiring any of them to cease doing business with Dierickx.

Respondent contends that the picketing complained of is essentially primary picketing because, as respondent argues, "each vending machine location represents a direct business outlet or location or agency of Dierickx' business—and an active functioning branch thereof." Respondent cites in support of this contention the decision of the Board in Local 282, International Brotherhood of Teamsters, etc. and Acme Concrete and Supply Corp., Case No. 2-CC-653, July 17, 1962, 137 NLRB No. 137, 50 LRRM 1374 (of which no transcript was supplied to the Court). From respondent's quotation from the Board's decision in the foregoing case it appears that the Board found that the charging party was not a neutral employer, by reason of the existence of an identity between it and the struck employer. Respondent therefore argues that because the restaurant proprietors shared in the proceeds of the merchandise sales by means of the Dierickx machines, an inference of neutrality on the part of the restaurant proprietor is unwarranted. I reject this contention. See Retail Fruit and Vegetable Clerks Union, etc. v. National Labor Relations Board, 9 Cir., 1957, 249 F.2d 591. There was no evidence before me that any one of the proprietors of the locations in which the machines were placed received any of the money directly from the machines or that the person or persons who removed the coins deposited in the ma-

chines acted as the representative of the proprietor of the location. The commission on sales of merchandise by means of the machines, to which the proprietor of the location became entitled under the lease agreement between him and Dierickx, was merely in lieu of rental or, if not, a monetary consideration for the privilege of placing, maintaining and operating the machine on the premises of the restaurant proprietor. I can discern no more right in the employees of Dierickx to picket restaurant proprietors than, for example, there would be in the case of employees of a sugar refiner who were on strike to picket a restaurant proprietor because he purchased the sugar produced by their employer for use in the preparation of food. In the case of the refiner, the restaurant proprietor purchases the sugar which is consumed by his patrons, who pay him for their meal. In the case of Dierickx, the merchandise contained in its vending machine is made available to the patron in consideration of an inserted coin or coins, ultimately controlled by Dierickx.

It is not contended that any of the members of respondent Local is an employee of any of the restaurants affected by the picketing. Indeed, it is conceded that the relationship between the restaurant proprietor and his employees is not a matter of concern to the respondent.

I am aware of, but distinguish the facts in McLeod, etc. v. Business Machine and Office Appliance Mechanics Conference Board, 2 Cir., 1962, 300 F.2d 237. In that case tabulating service mechanics of Univac Division of Remington Rand were on strike against their employer, and their union local began distributing handbills at the premises of certain businesses which leased Univac equipment. These handbills appealed to the public not to patronize these businesses. The preliminary injunction granted by the District Court was reversed on the ground that the distribution of the handbills was not an unfair labor practice because it was within the "publicity pro-

viso" of the Act. The language of that proviso is as follows:

"* * * Provided further, That for the purposes of this paragraph (4) only, nothing contained in such paragraph shall be construed to prohibit publicity, *other than picketing*, for the purpose of truthfully advising the public, including consumers and members of a labor organization, that a product or products are produced by an employer with whom the labor organization has a primary dispute and are distributed by another employer, as long as such publicity does not have an effect of inducing any individual employed by any person other than the primary employer in the course of his employment to refuse to pick up, deliver, or transport any goods, or not to perform any services, at the establishment of the employer engaged in such distribution; * * *." (Emphasis supplied.)

The exception contained in the foregoing proviso and expressed in the phrase "other than picketing" renders it inapplicable to the situation disclosed by the evidence in this case, and distinguishes the McLeod, etc. v. Business Machine case (supra) from that presently confronting us.

Picketing per se is not illegal. Indeed the *right of employees to enforce their demands by strike and peaceful picketing is expressly recognized by congressional enactment.*

"The legislative history of § 158(b) (4), frequently referred to as the 'secondary boycott section,' makes it compellingly clear that the evil sought to be eliminated by this legislation was not lawful primary activity, but those union activities which would embroil some neutral employer in a labor dispute not of his making, thus penalizing an unoffending employer to his damage. (Citing, inter alia, N.L.R.B. International Rice Milling Co., 341 U.S. 665, 71 S.Ct. 961, 95 L.Ed. 1284; and N.L.R.B. Denver

Building Council, 341 U.S. 675, 71 S.Ct. 943, 95 L.Ed. 1284.) * * *.

"Obviously, the most blatant example of the forbidden secondary activity would be the actual picketing of a neutral employer's premises." Local 978, United Brotherhood of Carpenters, etc. v. Markwell, 8 Cir., 1962, 305 F.2d 38, 44.

Does the picketing disclosed by the evidence in this case have as its object the forcing or requiring of the restaurant proprietors to cease doing business with Dierickx? If the answer to this question is in the affirmative, the conclusion is inescapable that there is reasonable cause to believe that the conduct of the respondent of which the charging party complains constituted an unfair labor practice within the meaning of 29 U.S.C. § 158(b) (4) (ii) (B). Coercion is defined as compulsion of a free agent. Compulsion may be moral or physical. The presence of even a single picket bearing a sign in front of a restaurant or diner does not enhance the attractiveness of the premises to potential patrons, and may reasonably be expected to deter some potential patrons from entering the premises. However, a serious question arises as to whether or not simple "consumer picketing" of a neutral employer, without more, constitutes a violation of § 8(b) (4) (ii) (B). The petitioner argues that the legislative history is clear to the effect that the intent of Congress was to ban such picketing. To the contrary, respondent cites Fruit and Vegetable Packers' and Warehousemen, Local 760 v. N. L. R. B., D.C.Cir.1962, 308 F.2d 311 (hereinafter referred to as Tree Fruits), where the Circuit Court, recognizing that many Senators felt that the amendment to the statute in question would prohibit secondary consumer picketing, nevertheless held that such picketing was not to be considered, per se, as constituting either a threat, coercion or restraint. The Court apparently felt impelled to such a conclusion, because of the constitutional difficulties inherent in the Board's decision. The facts there were that the employees of True Fruits, Inc., represented by the union, had a dispute with their employer, and after failing to reach an agreement, went out on strike. The union subsequently picketed Safeway Stores (a neutral employer) which distributed Tree Fruits, Inc.'s apples. The pickets directed their appeal to the consumers, asking them not to purchase the primary employer's product, which was there offered for sale. The Board found against the union, holding that such picketing was an unfair labor practice regardless of its effect. The Circuit reversed and remanded; its opinion, at p. 317, stating: "As we construe the statute, it condemns not picketing as such, but the use of threats, coercion and restraint to achieve specified objectives. Some picketing might come within the ambit of that prohibition. But here, there was no work stoppage, no interruption of deliveries, no violence or threat of violence. The record does not show whether pickets 'confronted' consumers or whether consumers felt 'coerced' by their presence. Nor does the record show that the picketing—directed against only one of hundreds of products sold by Safeway—caused or was likely to cause substantial economic injury."

■ Petitioner here requests this Court to hold that consumer picketing per se constitutes an unfair labor practice contrary to the Tree Fruits case, supra. We do not reach this point here. The evidence presented supports an inference that the picketing with which we are presently concerned was coercive upon the restaurant proprietors. The combination of the conversations between respondent's President and the respective proprietors, together with the establishment and maintenance of the picketing following non-compliance by the proprietors with the President's request, impels me to such a conclusion. The probability that the picketing had a coercive object of causing the neutral proprietors to cease doing business with Dierickx is emphasized by the stated willingness of respondent to forego or terminate picketing if the vending machines were disconnected, or "out of order" signs were placed thereon, whereby both Dierickx

and the restaurant proprietors would suffer financial loss. The Regional Director is, therefore, justified in believing that the conduct complained of may constitute an unfair labor practice, and he is therefore entitled to the preliminary injunctive relief at the hands of this Court, which he seeks herein.

An appropriate order may be presented.